**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**STACY WADDELL,**

                                        **Plaintiff,**

                **vs.**                                              **3:14-cv-00092**
                                                                     **(MAD)**

**CAROLYN W. COLVIN,**
**COMMISSIONER OF**
**SOCIAL SECURITY**,

                                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**LACHMAN & GORTON**                      **PETER A. GORTON, ESQ.**
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**        **JOSHUA L. KERSHNER, AUSA**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278-0004
Attorneys for Defendant


**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff Stacy Waddell ("Plaintiff") commenced this action on January 28, 2014, pursuant

to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of

Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI").  *See* Dkt. No. 1.

**II. BACKGROUND**

Plaintiff's date of birth is July 18, 1968, which made her nearly forty-three years old at the time she protectively filed for SSI and DIB on July 15, 2011. *See* Dkt. No. 9, Administrative Transcript ("T."), at 66, 168. Plaintiff completed her formal education at tenth grade, and, at the time of the hearing, she was participating in general educational development ("GED") classes twice a week so that she could take the test for a New York State High School Equivalency Diploma. *See id.* at 20, 27, 173. At her in-person interview at the disability field office, Plaintiff stated that she did not attend special education classes, but, at her hearing, she testified that she was always placed in special education classes. *See id.* at 20, 173. Plaintiff described herself as a strong reader but weak in math. *See id.* at 21. She has not completed any vocational training. *See id.* at 173. However, Plaintiff was working with VESID (vocational and educational services for individuals with disabilities) to find employment, but she discontinued using their services pending the outcome of her disability applications. *See id.* at 30.

From the years 2005 through 2011, Plaintiff worked full-time under an outside contract as a cook at the Fort Hood military post located in the City of Killeen, State of Texas. *See id.* at 38, 157-58, 173. She described that job as strenuous, hard work. *See id.* at 38. Plaintiff has not reported income from the year of 2006 and 2007, and it is reported that she was in prison for that period of time. *See id.* at 24, 69, 72. Plaintiff worked as an inventory specialist for two years and also as a janitor and collections agent prior to 2006. *See id.* at 173.

Plaintiff is the mother of three children, and she raised and cared for two of those children on her own. *See id.* at 19, 22. Her youngest son was a minor and residing with her at the time of the hearing. *See id.* at 19. He was receiving SSI for a learning disability. *See id.* at 22, 72. She cleaned her home and was able to prepare meals for him and herself. *See id.* at 32. Plaintiff attended her son's activities and choir. *See id.* at 40. At the hearing, Plaintiff described how she

was able to manage to pay her rent and bills throughout the years, sometimes even paying a part of her rent at time. *See id.* Plaintiff is able to count change and shop for food, clothing, and medications. *See id.* at 32-34, 179-83. The record indicates that Plaintiff socializes with friends and visits with her sister and friends despite having problems getting along with family, friends and neighbors due to her mood swings. *See id.* at 179-83.

Plaintiff was the victim of domestic violence, and she reported that she grew up in a home with domestic violence. *See id.* at 21, 28. Plaintiff testified that she left her job as a cook in Texas because she was having mood swings and "it was all closing in" on her. *See id.* at 24. Plaintiff has not been employed since June 21, 2011, which is also the claimed onset date of disability. *See id.* at 167-68.

On July 28, 2011, Plaintiff completed applications for DIB and SSI alleging that she is unable to work due to a bipolar disorder, depression disorder, sleep disorder, headaches, and forgetfulness. *See id.* at 172. The claim was initially disapproved on November 23, 2011, *see id.* at 66-68, and she filed a request for a hearing with an administrative law judge. *See id.* at 84-85. A hearing was held on October 11, 2012 before Administrative Law Judge F. Patrick Flanagan (the "ALJ"). *See id.* at 11-43.

At Plaintiff's hearing, she claimed that in the interim of time, from her application to the hearing, she developed worsening physical symptoms of disability in her hip and back. *See id.* at 25. She describes that she had been diagnosed with bursitis in her hip and a back injury for which she has undergone conservative and surgical treatment. *See id.* at 20-27. As a result of those impairments, Plaintiff claims that she is unable to bend, run, or stand for long periods of time. *See id.* at 28. If she does those things, she experiences shooting pain. *See id.* Plaintiff describes that her pain medication does not alleviate her symptoms but, instead, "dopes [her] up." *See id.*

3

Plaintiff testified that she can only sit for fifteen minutes before she needs to change her position, and she is limited to standing for five minutes. *See id.* at 34-35. Plaintiff walks with a cane, which was prescribed by her primary care physician. *See id.* at 35. Plaintiff can lift eight pounds but could not carry it for ten minutes. *See id.* At the time of the hearing, Plaintiff was also being treated at Broome County Mental Health for her depression and bipolar disorder. *See id.* at 29. Plaintiff is being treated with medication and describes that the symptoms of her mental health disorders have improved. *See id.* at 37. However, her ability to concentrate continues to be impaired. *See id.* at 38.

In a decision dated November 2, 2012, the ALJ determined that Plaintiff was not disabled under the Social Security Act. *See id.* at 44-61. Plaintiff timely filed a request for review by the Appeals Council, *see id.* at 8-10, and the Appeals Council denied her request for review rendering the ALJ's decision the Commissioner's final decision. *See id.* at 1-4. In his decision, the ALJ found the following: (1) Plaintiff met the insured status requirements of the Social Security Act through June 30, 2013; (2) Plaintiff had not engaged in substantial gainful activity since June 21, 2011; (3) Plaintiff's severe impairments include bipolar disorder, limited intellectual functioning, trochanteric bursitis in the right hip, mild compression fracture in the thoracic spine, and mild degenerative disc disease of the lumbar spine; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments; (5) Plaintiff has the residual functional capacity ("RFC") to lift and/or carry ten pounds frequently and twenty pounds occasionally, sit for six hours in an eight-hour day, and stand and/or walk for six hours in an eight hour day with limitations to simple tasks without frequent changes in routine; (6) Plaintiff's RFC renders her not capable of performing past relevant work; and, (7) considering Plaintiff's age, education, work experience, and RFC, there

are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See id.* at 49-60. Accordingly, the ALJ found that Plaintiff is not disabled as defined in the Social Security Act. *See id.*

Plaintiff commenced this action for judicial review of the denial of her claims by the filing of a complaint on January 28, 2014. *See* Dkt. No. 1. The parties have moved for judgment on the pleadings. *See* Dkt. Nos. 18, 23. Having review the administrative transcript, the Court orders that the Commissioner's decision is affirmed.

## III. DISCUSSION

### A.    Standard of Review

In a judicial review of a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine anew whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the administrative transcript to ascertain whether the correct legal standards were applied and whether the decision is supported by substantial evidence. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotation marks omitted).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial

evidence, the Commissioner's finding must be sustained. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). This Court must afford the Commissioner's determination considerable deference, and may not substitute its own judgment, even if a different result could be justifiably reached by the Court if it engaged in its own analysis. *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Analysis**

*1. Five-step analysis*

For purposes of both SSI and DIB, a person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The sequential evaluation process is as follows:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (internal citations omitted)). The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

*2. Listing Impairment*

Plaintiff claims that there is not substantial evidence to support the ALJ's determination that her intellectual disability does not meet or medically equal a listed impairment under Section

12.05(C) of 20 C.F.R. Part 404, Subpt. P, App. 1 ("§ 12.05"). It is stated in § 12.05 "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," which the regulation defines as before the age of twenty-two years. If a plaintiff meets one of the required levels of severity set out in the regulation, then he or she meets the listed impairment. Section 12.05(C) requires that a plaintiff has a "valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Id.* (emphasis added).

Plaintiff argues that she meets the requirements under this section because she submitted evidence that she has a full intelligence quotient ("IQ") score of 63 together with evidence that she has a physical or other mental impairment. *See* Dkt. No. 18 at 14. However, Plaintiff does not contend, or address, that she satisfies the diagnostic description contained in the introductory paragraph of § 12.05. To meet the listed impairment under § 12.05(C), a plaintiff "must make a threshold showing that they suffer from 'significantly subaverage general intellectual functioning with deficits in adaptive functioning.'" *Casey v. Comm'r of Soc. Sec.*, No. 7:13-CV-0947, 2015 WL 5512602, *6 (N.D.N.Y. Sept. 15, 2015) (citing *Douglass v. Astrue*, 496 Fed. Appx. 154, 157 (2d Cir. 2012)); *see also Burnette v. Colvin*, 564 Fed. Appx. 605, 607-08 (2d Cir. 2014); *Talavera v. Astrue*, 697 F.3d 145, 153 (2015). Further, the Second Circuit interpreted the regulation language to mean that the showing of plaintiff's deficits in adaptive functioning has to arise from the deficits in intellectual functioning and not from a physical ailment or other infirmity. *See Talavera*, 697 F.3d at 153. Adaptive functioning is defined as "an individual's '[ ]ability to cope with the challenges of ordinary everyday life.'" *Id.* (citing *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007)). A person, who is able to "satisfactorily navigate" living independently, raising her

own children without an adjudication of neglect, paying household bills, and avoiding eviction, does *not* suffer from a deficit in adaptive functioning. *Id.* (citing *Novy*, 497 F.3d at 710); *see also Burnette*, 564 Fed. Appx. at 607.

In this case, the ALJ found that Plaintiff is a single mother of three children, including one disabled child, who raised her children on her own for a many years. *See* T. at 51. Further, Plaintiff worked to provide for children. *See id.* The ALJ referenced Plaintiff's testimony that she has managed her finances up until the time of the hearing. *See id.* The ALJ also cites that Plaintiff was registered and attending classes twice a week in order to obtain her high school equivalency diploma. *See id.* The ALJ concluded that, even assuming that Plaintiff's IQ score from September 2012 accurately reflects Plaintiff's current cognitive function, there is not evidence that claimant has deficits in her adaptive functioning. *See id.* Based upon Plaintiff's testimony to the facts relied upon by the ALJ, the Court finds that there is substantial evidence to support the finding that Plaintiff does not meet or medically equal a listed impairment under § 12.05(C).

### 3. Low Intellectual Functioning

Plaintiff contends that the ALJ improperly evaluated her level of intellectual functioning, and, as a result, the findings of her RFC are not supported by substantial evidence. *See* Dkt. No. 18 at 9-13. Plaintiff makes several arguments to support her contention that the ALJ's finding of "limited intellectual functioning" instead of "extremely low intellectual functioning" evidences his fundamental misunderstanding of the evidence, which are: (1) the ALJ improperly weighed the opinions of Dr. Pousson and Dr. Lin because neither physician used the "required" intellectual analysis; (2) the ALJ did not properly weigh medical opinions; and (3) the ALJ substituted his lay

opinion for competent medical evidence when he cited Plaintiff's reading/decoding score of eighty-five. *See* Dkt. No. 18 at 9-13.

A plaintiff's RFC is the most that person can still do despite the limitations imposed by his or her impairments. *See* 20 C.F.R. §§ 404.1 545(a)(1); 416.945(a)(1). The ALJ will consider medical evidence and other evidence such as medical source statements, descriptions, and observations of limitations from the claimant and claimant's family and friends. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). The RFC must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including" mental abilities such as understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting. *See* 20 C.F.R. §§ 404.1545(c); 416.945(c); SSR 96-8P, 1996 WL 374184, *1 (July 2, 1996). Only functional limitations that are the result of medically determinable impairments are considered in the RFC assessment. *See* SSR 96-8P, 1996 WL 374184, *1 (July 2, 1996). In this case, the ALJ determined that Plaintiff is able to understand, remember, and carry out simple instructions and is able to relate adequately with supervisors and the public. *See* T. at 52-53.

The ALJ must assess a plaintiff's subjective symptoms using a two-step process. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, *1 (July 2, 1996). At the first step, the ALJ must determine whether a plaintiff has an underlying impairment that is established by acceptable clinical diagnostic techniques and could reasonably cause a plaintiff's symptoms. *See* SSR 96-7P, 1996 WL 374186, at *2. If an impairment is shown, the ALJ "must evaluate the intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which the symptoms limit the [plaintiff's] ability to do basic work activities." *See id.* at *2. "When the objective medical evidence alone does not substantiate the claimant's alleged

symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole." *Wells v. Colvin*, No. 87 F. Supp. 3d 421, 431 (W.D.N.Y. 2015); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999).

The entire case record includes a plaintiff's history, laboratory findings, a plaintiff's statements about symptoms, statements and information provided by treating and non-treating physicians, and statements from other people that describe how the symptoms affect a plaintiff. *See* 20 C.F.R. §§ 404.1529(c)(1); 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, at *1. Factors that are relevant to a plaintiff's symptoms include: (1) the plaintiff's daily activities, (2) location, duration, frequency, and intensity of symptoms, (3) precipitating and aggravating factors, (4) medications and their side effects, (5) treatment received, (6) measures used to alleviate symptoms, (7) and other factors concerning functional limitations and restrictions due the alleged symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i-vii).

Here, the ALJ found that Plaintiff has medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms. *See* T. at 53. However, the ALJ found that her statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible. *See id.* In support of his credibility finding, the ALJ cites to Plaintiff's own statements that she is able to independently execute activities of daily living such as preparing her own meals daily, paying her bills, counting change, and shopping for food, clothing, and medications. *See id.* at 32-34, 179-83. Further, Plaintiff enjoys reading and watching television everyday unless she is feeling down. *See id.* at 183. Plaintiff states that she socializes with friends, visits with her sister, and attends church regularly. *See id.* at 184.

Although Plaintiff claims to have difficulty getting along with others, including work supervisors, the ALJ notes that she has never lost a job due to problems getting along with people.

*See id.* at 54, 184. Also, Plaintiff testified that her mood swings were an issue at her last job in Texas but, since that time, she has been medicated and her symptoms have improved. *See id.* at 37. In October 2011, Plaintiff reported to her mental health provider, Melanie Hertzog, LCSW-R, that she works well with others and respects authority. *See id.* at 957. At that visit, she identified her difficulty is with changes in routines, requiring repeated verbal reminders of "new complex instructions." *See id.* At the time of the hearing, Plaintiff was taking a class twice a week in order to obtain her New York State equivalency diploma. *See id.* at 39. Plaintiff had also reported to Ms. Hertzog that she wanted to work as a cook, *see id* at 957, and she had applied for several jobs in September 2011. *See id.* at 958. The ALJ concluded that this evidence suggests that she is able to meet the mental demand of unskilled, light work. *See id.* at 54.

The ALJ also reviewed Plaintiff's medical evidence from Ms. Hertzog, identified as Plaintiff's treating therapist. *See id.* at 57, 302-06, 961-64. The ALJ found that Ms. Hertzog's opinion was supported by treatment notes and that it was also consistent with Plaintiff's reported daily activities. *See id.* at 57. Ms. Hertzog completed an evaluation for Plaintiff's vocational rehabilitation services in October 2011, and she stated that Plaintiff does *not* have limitations in the following areas: (1) ability to follow rules, (2) responds appropriately to changes in a routine work settings, (3) interact with supervisors and authority figures, (4) accepts instructions and responds appropriately to criticism from supervisors, (5) relates to co-workers, (6) deals with the public, (7) relates appropriately to social situations, (8) uses judgment, (9) deals with normal work stress, (10) functions independently, (11) performs at a consistent pace without an unreasonable number and length of rest periods, (12) understands, remembers, and carries out simple job instructions, (13) maintains personal appearance and adheres to basic standards of neatness and cleanliness, (14) demonstrates reliability, and (15) maintains regular attendance and

punctuality. *See id.* at 303. Further, Ms. Hertzog found that Plaintiff's mood disorder and attention deficit disorders effect her ability to absorb new complex instructions and, therefore, she has difficulty in changing her organizational routines. *See id.* Otherwise, Plaintiff has a good ability to maintain attention and concentration according to Ms. Hertzog. *See id.*

The ALJ reviewed and considered the consultation report from Cheryl Loomis, PhD, who examined Plaintiff at the request of the Broome County Department of Social Services in September 2012. *See id.* at 600-06. The ALJ accorded great weight to Dr. Loomis' opinion, finding that it was supported by an examination of Plaintiff. *See id.* at 58. The Court also finds that this opinion is consistent with the other medical evidence of Plaintiff's mental health. Dr. Loomis opined that Plaintiff has moderate limitation in ability to perform *complex* tasks independently, maintain attention and concentration for rote tasks, and regularly attend to a routine and maintaining a schedule. *See id.* at 604. However, Dr. Loomis found that Plaintiff had normal function in her abilities to follow, understand, and remember simple instructions and directions, and she is also capable of low stress and simple tasks. *See id.* Dr. Loomis concluded that Plaintiff is able to participate in work activities on a full-time basis in an environment that understands her cognitive and mental limitations. *See id.* at 605.

Essentially, Plaintiff attempts to attack the ALJ's findings at step two of the disability analysis, the threshold severity finding, to support her contention that the intellectual findings in the RFC are not supported by substantial evidence. *See* Dkt. No. 18 at 9-13. Plaintiff's intellectual impairments were properly found to be a severe impairment at step two by the ALJ. *See* T. at 49-52. Further, the ALJ properly found that the intellectual testing performed was objective medical proof of Plaintiff's alleged symptoms. *See id.* at 53. Said another way, the ALJ accepted that she had a medically determinable impairment, demonstrated by Plaintiff's testing,

that could reasonably cause her alleged symptoms. *See id.* The Court finds that the ALJ's analysis of Plaintiff's symptoms was in compliance with Social Security Regulations, as set forth by the Court above.

Plaintiff incorrectly asserts that the low scores on Plaintiff's intellectual testing is evidence that cannot be refuted. *See* Dkt. No. 18 at 9-13. The Second Circuit is clear that it is within the ALJ's discretion to consider intellectual testing with other evidence in the record when making a determination of disability. *See Burnette*, 564 Fed. Appx. at 608; *Talavera*, 697 F.3d at 153-54. Upon review of the evidence in the record, the Court finds that the RFC, as determined by the ALJ, is supported by substantial evidence including Plaintiff's hearing testimony and Plaintiff's medical records.

### *4. Vocational Testimony*

Plaintiff further contends that it was error for the ALJ to rely on the vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2008), (the "guidelines") instead of obtaining the testimony of a vocational expert. *See* Dkt. No. 18 at 22-24. The Second Circuit has stated that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Roma v. Astrue*, 468 Fed. Appx. 16, 21 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)). A vocation expert's testimony, or other similar evidence, is required "when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Id.* (quoting *Bapp*, 802 F.2d at 603). "A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of

a meaningful employment opportunity.'" *Id.* (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Bapp*, 802 F.2d at 606)).

Plaintiff's RFC states that (1) she is able to understand, remember, and carry out simple instructions; (2) she is able to relate adequately with supervisors, coworkers, and the public; and (3) she is limited to simple tasks without *frequent* changes in routine. *See* T. at 52-53. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, *4 (1985). The Second Circuit has found that a plaintiff's mental condition does not limit her ability to perform unskilled work where she is able to carry out "simple instructions, deal[] with work changes, and respond[] to supervision" because her nonexertional limitations do not result in an additional loss of work capacity. *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013); *see also Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010).

In this case, the ALJ stated that the opinion of a vocational expert was not necessary because the Social Security Rulings provided sufficient guidance for determining whether there were a significant number of jobs in the national economy that a person, such as Plaintiff, could perform. *See* T. at 59. The Court finds that the ALJ's determination that Plaintiff retains the ability to meet the basic mental demands of unskilled work was supported by substantial evidence. Accordingly, the ALJ did not err when he did not obtain a vocational expert's opinion.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and, for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 9, 2016
Albany, New York

Mae A. D'Agostino
U.S. District Judge